**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff, | ) | |
| v. | ) | Civil Action No. |
| WALDON L. FENSTER, Defendant. | ) | Jury Trial Demanded |

# COMPLAINT

Plaintiff, Securities and Exchange Commission ("SEC"), alleges:

## SUMMARY

1. This case involves an individual investment adviser who engaged in securities fraud by lying to investors and misappropriating investors' money.

2. Defendant Waldon L. Fenster ("Fenster") acted as an unregistered investment adviser to a private pooled investment vehicle, Next Generation Legacy Fund, LLC, which also went by the marketing name Last Mile Loan (hereinafter, "Last Mile Loan" or the "Fund").

3. Fenster conducted his fraud from approximately January 2023 to March 2024, a period in which he resided in Downers Grove, Illinois.

4. Fenster raised approximately $3.6 million from 23 individual investors. The investors were located throughout the United States, including several in the Chicago metropolitan area.

5. Fenster, as the sole member and owner of NGLF Management, LLC ("NGLF Management") – the purported manager of the Fund – told Fund investors that he would generate

profits of more than 20% by making short-term, high-interest loans to small businesses that he selected based on a thorough due diligence process. Fenster told investors he was identifying small businesses that were seeking greater financing from established lending institutions to fund expansion opportunities, but needed more cash on hand to qualify for the financing. Fenster's purported plan for the Fund, as he informed investors through both conversations and marketing materials, was to issue short-term high-interest bridge loans to these small businesses so they could obtain the greater financing, which they would then use to pay back the loan and the interest.

6. However, the Fund never issued any of these loans. Instead, Fenster misappropriated $2,516,120.80 from the Fund and used it for personal expenses, such as gambling, trips, and living expenses. Fenster returned the remainder of the funds raised to certain investors whom he hoped would refer new potential investors to the Fund, and to one investor who threatened to sue him.

7. As his fraud continued, Fenster lied to other investors to delay their requests to withdraw from the Fund. Eventually, as his scheme unraveled, Fenster informed investors that he "made mistakes" and that their money was gone.

8. By his misconduct, Fenster violated antifraud provisions of the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), and the Investment Advisers Act of 1940 ("Advisers Act").

9. Unless Fenster is permanently restrained and enjoined, he will continue to engage in the acts, practices, and courses of business set forth in this Complaint and in acts, practices, and courses of business of similar type and object.

## JURISDICTION AND VENUE

10. The SEC brings this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 78t(b)]; Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)]; and Sections 209 and 214 of the Advisers Act [15 U.S.C. §§ 80b-9 and 80b-14].

11. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 78v(a)]; Sections 21(d)(3), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(e), and 78aa]; and Sections 209 and 214 of the Advisers Act [15 U.S.C. §§ 80b-9 and 80b-14]. Fenster, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint.

12. Venue in this District is proper pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v]; Section 27 of the Exchange Act [15 U.S.C. § 78aa]; and Section 214 of the Advisers Act [15 U.S.C. § 80b-14] because Fenster has transacted business in this District, and he conducted offers or sales of investments in the Fund in this District.

## DEFENDANT

13. **Waldon L. Fenster**, age 38, is currently a resident of Fort Worth, Texas, but resided in Downers Grove, Illinois, during the relevant time-period. During the relevant time-period, he was the sole owner and member of NGLF Management, the purported manager of the Fund. Fenster was also the sole owner of several other small businesses that he founded.

## FACTS

### Fenster Created Last Mile Loan

14. In 2021, Fenster formed the Fund.

15. At the time, the Fund's LLC agreement stated that its purpose was to "invest in, acquire, hold, and dispose of the securities of early-stage and emerging companies." Fenster raised approximately $578,070.10 from nine different investors for the Fund while it employed this trading strategy, but its investments under this strategy were ultimately unsuccessful.

16. In early 2023, Fenster changed the Fund's investment strategy.

17. In February 2023, the Fund amended its LLC agreement. The amended LLC agreement no longer stated that the Fund's purpose was to invest in the securities of emerging companies. Instead, it stated that the purpose of the Fund was to "invest in, acquire, hold, and dispose of bridge debt loans," as well as to "invest in, acquire, hold, and dispose of personal guarantee escrows . . . engage in such other activities as the Manager deems necessary . . . [and] engage in any other lawful business."

18. The amended LLC agreement also described NGLF Management as the manager of the Fund, consistent with the original agreement. However, Fenster never set up any bank accounts or obtained any legal documents for NGLF Management, and he continued to be the Fund's sole owner and member.

**Fenster Marketed Last Mile Loan's Purported Debt Strategy**

19. Fenster claimed through marketing materials and in meetings with investors that under the Fund's new debt strategy, the Fund would issue short-term, high-interest bridge loans to companies that needed additional cash on hand to secure larger third-party financing from traditional lenders for expansion opportunities.

20. Fenster told investors that after a company obtained the short-term, high-interest bridge loan from the Fund, the company could then secure the larger financing from the

traditional lender and immediately use the new infusion of cash to pay back the bridge loan from the Fund.

21. Fenster told investors that, as a result of the Fund's investment model, they could receive up to 20% interest on their investments. The marketing materials that Fenster prepared for the Fund stated that the Fund's purpose was to "earn attractive returns while minimizing risk through a diversified portfolio of debt investments," and that the goal was "to achieve a return on investment (ROI) of 20-30% per deal done."

22. The marketing materials also explained that Fenster was going to charge a 2% management fee as well as a 20% performance fee.

23. In addition, the Fund began using the name "Last Mile Loan" in its marketing materials.

**Last Mile Loan's Marketing Materials Contained Multiple Misrepresentations**

24. Fenster prepared the Fund's marketing materials by copying language from unrelated funds' marketing materials, which he then distributed to Last Mile Loan's potential investors.

25. The marketing materials he gave to potential investors described a detailed due diligence process the Fund purportedly conducted to identify companies seeking financing prior to issuing the purported bridge loans.

26. But Fenster never conducted any of the purported due diligence and never issued any loans from the Fund. Instead, Fenster transferred the investors' money to different entities that Fenster owned. Fenster then used that money for gambling or to pay his personal expenses.

27. The Fund's marketing materials also listed prior loans that the Fund supposedly made, as well as the returns the Fund supposedly received from those loans.

28. However, other, unrelated funds, not the Fund, completed those deals, and Fenster copied this information from their marketing materials.

29. Fenster understood that including information about deals other funds had completed in Last Mile Loan's marketing materials would create the impression that the loans had been issued by Last Mile Loan. According to Fenster, he did so to build credibility with investors.

**Fenster Raised Approximately $3.6 Million from 23 Different Investors**

30. From January 2023 to March 2024, while the Fund purported to pursue a debt investment strategy, Fenster raised approximately $3.6 million from 23 individual investors located in various states across the country (including five individuals who had previously invested in the Fund when it was engaged in its previous investment strategy).

31. The investors in the Fund were individuals whom Fenster either knew from his professional network or were referrals from his professional network.

32. Most individuals invested between $50,000 to $200,000 in the Fund, although one invested over $1,000,000.

33. Fenster pooled the investments together in the Fund's bank account, and investors believed that Fenster would use their investments to finance bridge loans issued by the Fund.

**Fenster Misappropriated the Fund's Money**

34. Fenster never invested any of the Fund's money as represented.

35. Instead, Fenster went to casinos regularly and gambled extensively with the Fund's money. For a period of time, Fenster went to casinos daily and sometimes visited multiple

casinos in a day. For instance, between April 20, 2023, and July 31, 2024, Fenster visited one casino more than 200 times.

36. In addition, Fenster used the money raised from new investors to pay the Fund's original investors who chose to exit the Fund after it switched to its new debt strategy.

37. Fenster also used the Fund's money for trips and meals, which he claimed were legitimate business expenses to raise money from new investors for the Fund. However, Fenster had told potential investors via email prior to their investment that he would not use any investor funds for "sales expenses to raise more capital."

38. Further, Fenster used the Fund's money to finance his personal expenses – which were approximately $30,000 to $40,000 per month – on items such as cars, nannies for his children, and groceries.

39. While the Fund's LLC agreement stated that Fenster would receive a 2% management fee, the amount that Fenster took from the Fund for personal use well exceeded 2% every month.

**Fenster Made False Statements to Investors Regarding the Status of Their Investments**

40. In late 2023, several investors reached out to Fenster seeking to withdraw money from the Fund. In each instance, Fenster offered excuses for why they could not withdraw. He also falsely represented to investors that the Fund had earned substantial returns.

41. For example, on November 8, 2023, one investor sent an email to Fenster requesting to withdraw his funds. Fenster responded and claimed that the investor had earned a 56% return, and that the Fund could only pay out if the "loans pay off early."

42. After months of no communication and additional withdrawal requests by the investor, on February 29, 2024, Fenster sent an email claiming that his "legal and accounting

teams" had "identified an oversight in the way profit distributions were made," and that as a result, he could not allow any withdrawals. These statements were all lies. In fact, the Fund did not have a legal or accounting team, and no one identified any oversight in how profit distributions were made. Fenster never responded to subsequent emails from the investor.

43. As another example, in November 2023, three investors sent multiple emails to Fenster requesting updates regarding their investment. Fenster eventually sent them an email claiming they had received a total return of 24.23%. Fenster then sent them emails claiming he had multiple deals to finance and ultimately convinced the three investors to keep their money in the Fund for an additional 90 to 100 days.

44. All of these statements to investors were false.

**Fenster Continued Soliciting Potential New Investors While Informing Other Investors the Money in the Fund was Gone**

45. On March 1, 2024, Fenster sent an email to a different investor acknowledging that he had made mistakes with the Fund and begging for more time:

> I have written and rewritten this email more times than I can count. I am in a very dark place and deep hole… I am embarrassed, ashamed and living in constant regret… The one thing I keep asking for is the one thing I keep saying I need is time… but after 45 days now of constant outflow of money… I have nothing left. … I am not denying that I owe you money… I am not denying that I have done things and deals that I should never have done.

46. However, at the same time Fenster sent this email, he was continuing to solicit new investments in the Fund. The last deposit from an investor into the Fund's bank account came on March 4, 2024.

47. Fenster sent a similar email to another group of investors on April 23, 2024.

48. Fenster ultimately ceased communicating with Fund investors around June 2024.

**Last Mile Loan Investors Lost Approximately $2.5 Million**

49. The majority of the Fund's investors lost their entire investments.

50. One investor received partial repayments after threatening to sue Fenster.

51. Fenster gave preferential treatment to a few investors and allowed them to withdraw their money from the Fund early despite making other communications to investors referencing a one-year lockup. Fenster allowed these investors to exit early because they had referred investors to the Fund.

52. Ultimately, the Fund's investors lost a total of $2,516,120.80, all of which Fenster gambled or otherwise misused.

## CLAIMS FOR RELIEF

## COUNT I

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder**

53. The SEC realleges and reincorporates by reference the allegations set forth in paragraphs 1 through 52 above.

54. By engaging in the conduct described above, Fenster, directly or indirectly, singly or in concert with others, by use of the means or instrumentality of interstate commerce, or by the use of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, has: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operated or would have operated as a fraud or deceit upon purchasers of securities and upon other persons.

55. Fenster knowingly or recklessly made the material misrepresentations and omissions and engaged in the fraudulent scheme described herein.

56. By reason of the foregoing, Fenster violated, and unless enjoined will likely again violate, Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT II

### Violations of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]

57. The SEC realleges and reincorporates by reference the allegation set forth in paragraphs 1 through 52 above.

58. By engaging in the conduct described above, Fenster, directly or indirectly, singly or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce and by use of the mails, has employed devices, schemes or artifices to defraud.

59. Fenster knowingly or recklessly made the material misrepresentations and omissions and engaged in the fraudulent scheme described herein.

60. By reason of the foregoing, Fenster violated, and unless enjoined will likely again violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT III

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)]

61. The SEC realleges and reincorporates by reference the allegation set forth in paragraphs 1 through 52 above.

62. By engaging in the conduct described above, Fenster, directly or indirectly, singly or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce and by use of the mails, has: (a) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (b) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

63. Fenster knowingly, recklessly, or negligently made the material misrepresentations and omissions and engaged in the fraudulent scheme described herein.

64. By reason of the foregoing, Fenster violated, and unless enjoined will likely again violate, Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT IV

### Violations of Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)]

65. The SEC realleges and reincorporates by reference the allegations set forth in paragraphs 1 through 52 above.

66. At all relevant times, Fenster acted as an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

67. By engaging in the conduct described above, Fenster, while acting as an investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, employed devices, schemes, or artifices to defraud clients or prospective clients.

68. Fenster knowingly or recklessly employed the devices, schemes or artifices to defraud described herein.

69. By reason of the foregoing, Fenster has violated and, unless enjoined, will likely again violate, Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

## COUNT V

### Violations of Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)]

70. The SEC realleges and reincorporates by reference the allegations set forth in paragraphs 1 through 52 and 66 above.

71. By engaging in the conduct described above, Fenster, while acting as an investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly engaged in transactions, practices, or courses of business which operate as a fraud or deceit upon clients or prospective clients.

72. Fenster knowingly, recklessly, or negligently engaged in the transactions, practices, or courses of business described herein.

73. By reason of the foregoing, Fenster has violated and, unless enjoined, will likely again violate, Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)].

## COUNT VI

### Violations of Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8]

74. The SEC realleges and reincorporates by reference the allegations set forth in paragraphs 1 through 52 and 66 above.

75. By engaging in the conduct described above, Fenster, while acting as an investment adviser, directly or indirectly, by use of the mails or means or instrumentalities of

interstate commerce, engaged in acts, practices, or courses of business that were fraudulent deceptive, or manipulative.

76. By engaging in the conduct described above, Fenster, while acting as an investment adviser to a pooled investment vehicle: (a) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, to investors or prospective investors in the pooled investment vehicle; and (b) engaged in acts, practices and courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in the pooled investment vehicle.

77. Fenster knowingly, recklessly, or negligently engaged in the acts, practices, or courses of business described herein.

78. By reason of the foregoing, Fenster has violated, and unless enjoined, will likely again violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## **RELIEF REQUESTED**

WHEREFORE, the SEC respectfully requests that the Court:

a. Enter an Order of Permanent Injunction in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, restraining Fenster, his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, who receive actual notice of the Order, by personal service or otherwise, from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule l0b-5 thereunder [17 C.F.R. § 240.10b-5], Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. § 80b-6(1), (2), (4)], and Rule

206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8] by committing or engaging in specified actions or activities relevant to such violations.

b. Enter an order of Permanent Injunction pursuant to Section 21(d)(1) and (5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9], restraining Fenster, his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, who receive actual notice of the Order, by personal service or otherwise, from, directly or indirectly, including but not limited to through any entity owned or controlled by Fenster, participating in the issuance, purchase, offer, or sale of any security, provided that such injunction shall not prevent Fenster from purchasing or selling securities for his own personal account.

c. Enter an order of Permanent Injunction pursuant to Section 21(d)(1) and (5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9], restraining Fenster, his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, who receive actual notice of the Order, by personal service or otherwise, from, directly or indirectly acting as or being associated with any broker, dealer, or investment adviser. For purposes of this paragraph:

i. a person is associated with a broker or dealer if such person is a partner, officer, director, or branch manager of such broker or dealer (or occupies a similar status or performs similar functions), directly or indirectly controls, is controlled by, or is under common control with such broker or dealer, or is an employee of such broker or dealer;

ii. a person is associated with an investment adviser if such person is a partner, officer, or director of such investment adviser (or performs similar functions), or directly or indirectly controls or is controlled by such investment adviser, including any employee of such investment adviser.

d. Enter an Order requiring Fenster pursuant to Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), (d)(5), (d)(7)] to disgorge the ill-gotten gains that he received, directly or indirectly, as a result of the violations alleged in this Complaint, including prejudgment interest thereon.

e. Enter an Order imposing an appropriate civil penalty upon Fenster pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

f. Grant such orders for further relief the Court deems appropriate.

**JURY DEMAND**

Pursuant to Rule 39 of the Federal Rules of Civil Procedure, the SEC demands that this case be tried before a jury.

Respectfully submitted,

DATED: September 3, 2026

/s/Eric M. Phillips

Eric M. Phillips (IL Bar # 6237871)
Matthew T. Connelly (IL Bar # 6320465)
U.S. Securities and Exchange Commission
175 West Jackson Boulevard, Suite 1450
Chicago, Illinois 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398
Email: Phillipse@sec.gov
Email: Connellym@sec.gov

Attorneys for Plaintiff